E-FILED
Friday, 18 September, 2020  09:56:16 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **WOLFRAM RESEARCH, INC.** ) <br> 100 Trade Center Drive ) <br> Champaign, IL 61820 ) <br> ) <br> **Plaintiff,** ) <br> v. ) <br> ) <br> **UNITED STATES CITIZENSHIP AND** ) <br> **IMMIGRATION SERVICES;** ) <br> **KENNETH T. CUCCINELLI**, Senior Official ) <br> Performing Duties of the Director, ) <br> U.S. Citizenship and Immigration Services, in ) <br> His official capacity, ) <br> 20 Massachusetts Avenue, NW ) <br> Washington, DC 20529 ) <br> ) <br> ) <br> **Defendants.** ) <br> ) | **Case No: 2:20-cv-02260** |

## COMPLAINT

### Introduction

1.      Plaintiff Wolfram Research, Inc. challenges the unlawful denial of its

nonimmigrant petition (WAC-19-190-50969) seeking approval of H-1B classification on behalf

of Ms. Ishwarya Vardhani under 8 U.S.C. § 1101(a)(15)(H).

2.      Wolfram Research, Inc. is a privately held company founded in 1987 by Physicist and

Stanford graduate Dr. Stephen Wolfram. Wolfram Research, Inc. and its affiliate, Wolfram

Alpha LLC, employ nearly 500 individuals in the U.S., and the Wolfram group has more than

700 employees worldwide, including the UK, Peru and Sweden. Wolfram Research, Inc. has

three U.S. locations – its Headquarters in Champaign, IL, an office in Concord, MA (just outside

Boston) and an office in Phoenix, AZ. As pioneers in computational science and the

computational paradigm, Wolfram Research, Inc. has pursued a long-term vision to develop the

science, technology, and tools to make computation (i.e., math) an ever-more-potent force in

today's and tomorrow's world. Mathematica, Wolfram Research, Inc.'s flagship product, is a

computational software program spanning all areas of technical computing—including neural

networks, machine learning, image processing, geometry, data science, visualizations, and

others. A large majority of Wolfram Research, Inc.'s customers are academic institutions of

higher education.

3.      Mathematica, based on Wolfram Language, is a licensed product, and also the basis for

Wolfram|Alpha, a "computational knowledge," (or "answer"), engine developed by Wolfram

Research, Inc.[1]  Wolfram|Alpha encompasses computer algebra, symbolic and numerical

computation, and visualization and statistics capabilities.  Furthermore, Microsoft's Bing search

engine was one of Wolfram|Alpha's first commercial API customers in November 2009. It is

also queried by Apple's Siri, Samsung's S Voice and Dexetra's speech recognition software for

the Android platform, Iris and the voice control software on Blackberry 10, as well as Amazon's

Alexa (Echo) via Alexa Skills. [2]  As such, Wolfram employees who are working on technical

projects to bring new products and services to fruition for our customers must have not only the

---

1 See www.wolframalpha.com.
2 See The Wolfram|Alpha Team (April 18, 2011). "Wolfram|Alpha and DuckDuckGo Partner on API Binding and Search Integration". *Wolfram|Alpha Blog [http://blog.wolframalpha.com/2011/04/18/wolframalpha-and-duckduckgo-partner-on-api-binding-and-search-integration/]*, See also "Alexa gets access to Wolfram Alpha's knowledge engine," *TechCrunch, December 2018* [https://techcrunch.com/2018/12/20/alexa-gets-access-to-wolfram-alphas-knowledge-engine/2018/12/20/alexa-gets-access-to-wolfram-alphas-knowledge-engine/] and See "Alexa Now Taps Wolfram Alpha to Answer Science and Math Questions," *Venture Beat, December 2018* [https://venturebeat.com/2018/12/20/alexa-now-taps-wolfram-alpha-to-answer-science-questions/].

computational foundation provided by today's rigorous engineering, science and math courses of study, but also the scientific and engineering skills those courses instill.

4.      As described in its initial petition to U.S. Citizenship and Immigration Services (hereinafter "USCIS" or "the Service"), Wolfram Research, Inc.'s seeks to employ Ms. Vardhani in the role of Senior Business Development Associate (Department of Labor occupational classification "Sales Engineer," 41-9031.00, which has alternate reported job titles Account Executive, Account Manager, Customer Engagement Manager and Product Manager, among others). Wolfram Research, Inc.'s minimum requirements for the role included the attainment of a Bachelor's degree or higher, or its equivalent, in Computer Science, Engineering, Math, Physics or a related or technical field. *See* Wolfram_H1B_Record 029.

5.      On January 2, 2020, USCIS denied the H-1B petition, concluding "You have not met any of the four criteria enumerated at 8 CFR § 214.2(h)(4)(iii)(A). Therefore, you have not shown that the proffered position is a specialty occupation." *See* Wolfram_H1B_Record 186-195.

6.      The denial of the petition by USCIS runs counter to, and fundamentally disregards, substantial evidence in the record. The decision is arbitrary and capricious and an abuse of its discretion, and not in accordance with the law.

7.      Plaintiff Wolfram Research, Inc. seeks an order overturning the denial and requiring USCIS to adjudicate and approve its H-1B nonimmigrant petition.

**Jurisdiction and Venue**

8.      This case arises under the Immigration and Nationality Act ("INA"), 8 U.S.C. §1101 et seq. and the Administrative Procedure Act ("APA"), 5 U.S.C. §701 et seq. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as a civil action arising under the laws of the

United States. This Court also has authority to grant declaratory relief under 28 U.S.C. §§2201-

02, and injunctive relief under 5 U.S.C. §§ 702 and 705, and 28 U.S.C. §§ 1361. The United

States has waived sovereign immunity under 5 U.S.C. §§702 and 705.

9.      Wolfram Research, Inc. may seek judicial review upon denial of the visa petition

without any further administrative appeal. See, e.g., EG Enters. v. DHS, 467 F. Supp. 2d 728,

732-33 (E.D. Mich. 2006) (H-lB petition denial; USCIS agreed in its crossmotion that

exhaustion not required); RCM Technologies, Inc. v. US. Dept. of Homeland Sec., 614 F. Supp.

2d 39, 45 (D.D.C. 2009) ("[P]laintiffs need not pursue an AAO appeal before seeking judicial

review of denied visa applications in federal court.").

## Venue

10.     Venue is proper under 28 U.S.C. § 1391(e)(1)(C) as a civil action brought against officers

and agencies of the United States in their official capacities in the district where the

Plaintiff resides.

## Parties

11.     Plaintiff Wolfram Research, Inc. is a corporation headquartered in Champaign,

IL.

12.     Defendant USCIS is a component of the U.S. Department of Homeland Security

("DHS"), 6 U.S.C. § 271, and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1).

USCIS adjudicates petitions for immigration benefits, and denied the nonimmigrant petition for

H-1B status that Plaintiff Wolfram Research, Inc. filed on behalf of Ms. Vardhani.

13.     Defendant Kenneth T. Cuccinelli, at the time this Complaint is filed, is the Senior

Official Performing Duties of the Director, as the position of USCIS Director remains vacant. In

this position, he is responsible for overseeing the adjudication of immigrant benefits and

establishing and implementing governing policies. He has ultimate responsibility for the denial

of Wolfram Research, Inc.'s H-1B petition on behalf of Ms. Vardhani, and is sued in his official

capacity.

## Legal Framework

14.     Congress established a nonimmigrant classification to permit noncitizens to

temporarily perform services in the United States in specialty occupations. 8 U.S.C. §

1101(a)(15)(H)(i)(b). This nonimmigrant classification is commonly referred to as H-1B.

15.     A U.S. employer must follow a multi-step, two-agency process to obtain an H-1B

classification for a position it seeks to fill with a foreign worker. First, it must file a Labor

Condition Application with the U.S. Department of Labor in which it attests to standards to

which it will adhere. On this application, the employer must identify the Standard Occupational

Classification (SOC) code and occupational title of the position it seeks to fill. The SOC system

is a federal statistical standard used by federal agencies to classify workers into occupational

categories for the purpose of collecting, calculating, or disseminating data.

16.     Upon the Department of Labor's certification of the Labor Condition Application,

the U.S. employer will file it and an H-1B petition with the Defendant USCIS. In its H-1B

petition, the U.S. employer petitioner must demonstrate by a preponderance of the evidence that

the position it seeks to fill is in a specialty occupation.

17.     A "specialty occupation" is a position that requires the theoretical and practical

application of a body of highly specialized knowledge, and attainment of a bachelor's or higher

degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation. 8

U.S.C. § 1184(i)(1).

18.     DHS regulations define specialty occupation to mean "an occupation which

requires theoretical and practical application of a body of highly specialized knowledge in fields

of human endeavor including, but not limited to, architecture, *engineering*, mathematics,

physical sciences, social sciences, medicine and health, education, business specialties,

accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree

or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in

the United States." 8 C.F.R. § 214.2(h)(4)(ii). [emphasis added].

19.     Implementing regulations at 8 C.F.R. § 214.2(h)(4)(iii)(A) further provide that a

position will satisfy the statutory definition of specialty occupation if it meets one – and only one

- of the following criteria:

- A baccalaureate or higher degree or equivalent is normally the minimum requirement for entry into the particular position;

- The degree requirement is common in industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

- The employer normally requires a degree or equivalent for the position; **or**

- The nature of specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with attainment of a baccalaureate or higher degree.

20.     To perform services in a specialty occupation, a beneficiary must, *inter alia*, hold

a U.S. bachelor's or higher degree from an accredited college or university (or a foreign degree

determined to be equivalent) as required by the specialty occupation. 8 C.F.R. §

214.2(h)(4)(iii)(C).

21.     In accordance with Matter of Chawathe, 25 I&N Dec. 369, 375-376 (AAO 2010),

except where a different standard is specified by law, a petitioner in administrative immigration

proceedings must demonstrate by a preponderance of the evidence that the petition meets each

eligibility requirement for the benefit sought. "[E]ven if the director has some doubt as to the

truth, if the petitioner submits relevant, probative, and credible evidence that leads the director to

believe that the claim is 'probably true' or 'more likely than not,' the applicant or petition has

satisfied the standard of proof. See INS v. Cardozo-Fonseca, 480 U.S. 421 (1987) (defining

"more likely than not" as a greater than 50 percent probability of something occurring).

**Factual Allegations**

22.     USCIS accepted an H-1B nonimmigrant petition filed by Plaintiff on behalf of

beneficiary Ms. Ish Vardhani on April 11, 2019.

23.     Ms. Vardhani has been employed by Wolfram Research, Inc. since August 3,

2015, and served in the proffered role Senior Business Development Associate since August 1,

2018. She is currently authorized to work in the United States through September 12, 2021,

pursuant to an Employment Authorization Card issued to her as an H-4 visa holder and based on

her husband's H-1B nonimmigrant status and his I-140 immigrant visa petition approval, as

authorized under 8 CFR 214.2(h)(9)(iv).  See Wolfram_H-1B_Record 035 - 036.

24.     The USCIS has proposed removal of the final rule permitting employment

authorization to certain H-4 dependent spouses of H-1B nonimmigrant workers who are seeking

employment-based lawful permanent resident (LPR) status. The most recent update on the

website of the Office of Information and Regulatory Affairs Unified Agenda and Regulatory

Plan shows it is in the Proposed Rule Stage. See www.Reginfo.gov,  RIN number 1615-AC15. If

8 CFR 214.2(h)(9)(iv) is removed, then Ms. Vardhani will have no way of extending her

employment authorization beyond September 12, 2021 and Wolfram Research, Inc. will no

longer be able to employer her. Further, even if the regulation is not removed, should her

husband lose his employment supporting his H-1B, she will not be able to extend her

employment authorization beyond September 12, 2021. It is for both these reasons that Wolfram

Research, Inc. seeks to independently sponsor Ms. Vardhani for an H-1B petition.

25.     Ms. Vardhani earned a U.S. Master of Science degree in Mathematics in December 2008, from the University of Cincinnati in the U.S. *See* Wolfram_H-1B_Record 041-044. Ms. Vardhani further possesses a Bachelor of Science in Mathematics issued April 2006 by the University of Madras in India. *See* Wolfram_H-1B_Record 045-046.

26.     As the Plaintiff described in its initial letter of support, the position Senior Business Development Associate requires the employee to collaborate with business and technical teams to understand customer requirements, to promote the sale and adoption of company products, and to provide customer and technical support. This includes applying knowledge of cutting-edge computer technologies, including mobile, big data, connected devices, cloud technology. The skills and knowledge needed for these tasks would be gained via a minimum of a bachelor's degree in Computer Science, Engineering, Math, Physics or a related technical or quantitative field (i.e., STEM fields). *See* Wolfram_H-1B_Record 027-031.

27.     USCIS issued a Request for Evidence ("RFE") on October 9, 2019, and called for additional evidence that the position offered to the beneficiary meets the requirements for a specialty occupation. *See* Wolfram_H-1B_Record 063-070.

28.     Plaintiff submitted its timely response on November 22, 2019, and, along with substantial evidence documenting the "specialty occupation" nature of the position, attached an additional support letter from Eric Schacht, General Counsel of Wolfram Research, Inc. This letter provided more detailed explanations of the beneficiary's proposed day-to-day job duties and the company's minimum requirements for the role, and tied these requirements to both the "Sales Engineers" occupation generally and the company's specific needs for this particular role. *See* Wolfram_H-1B_Record 072-079.

29.    As the RFE response letter elaborates, "Mathematica, our flagship product, is a computational software program spanning all areas of technical computing—including **neural networks**, **machine learning**, **image processing**, **geometry**, **data science**, **visualizations,** and others." *See* Wolfram_H-1B_Record 072.

30.    In its response to the RFE, Plaintiff further clarified that the minimum requirements for the position include the attainment of a Bachelor's degree or higher, or its equivalent, in Computer Science, Engineering, Mathematics, Physics or a related technical or quantitative field:

> The reason why a minimum of a bachelor's degree in the specific specialty of the aforementioned closely related fields is critical here is this role involves representing and selling mathematics-based, computational technology. The person in this role must be educated at a sufficient level to be able to communicate and work with other technology professionals to ensure that the output is accurate.  The above coursework would prepare someone to effectively and precisely carry out the core duties of the Senior Business Development Associate (Sales Engineer) role for our company, as well as to communicate with coworkers and customers, and across internal departments about the highly technical content of the products. *See* Wolfram_H-1B_Record 079.

19.    Plaintiff submitted the following documentation, uncontroverted by Defendants, as evidence of the specialized nature of the role:

- Additional information about Plaintiff, including printouts from Wolfram Research, Inc.'s website regarding its products and services and its twitter feed and Wikipedia page, as well as information about its nonprofit Wolfram Foundation and its Computer-Based Maths initiative, focusing on improving access to mathematics for students, *See* Wolfram_H-1B_Record 081-117;

- Line-and-block organizational charts for both the Plaintiff's Executive Committee Level employees and for the Partnerships department in which the offered role is located, *See* Wolfram_H-1B_Record 119-120;

- The Department of Labor's O*Net summary report for the "41-9031, Sales Engineers" occupation showing that Sales Engineers, "Sell business goods or services, the selling of which **requires** a technical background **<u>equivalent to</u>** a **baccalaureate degree in engineering**." [emphasis added] *See* Wolfram_H-1B_Record 128-136;

- Multiple job postings for similar roles with other similar companies in the industry, namely for three similar organizations. These organizations are listed as competitors by Dun & Bradstreet, the same company used by USCIS for its VIBE, "Validation Instrument for Business Enterprises" program) - MathWorks, PTC, Inc. and National Instruments. The job postings of these other similar organizations include parallel minimum requirements similar to those required for Ms. Vardhani's position, *See* Wolfram_H-1B_Record 145-156;

- Evidence that the above-named companies advertising for similar roles, with similar requirements constitute similar organizations: 1) the Dun & Bradstreet Hoover's free information posted about Wolfram competitors and 2) the USCIS's own web page indicating that its own program VIBE (Validation Instrument for Business Enterprises) uses Dun & Bradstreet information for verifying businesses for employment-based immigration petitions *See* Wolfram_H-1B_Record 158-158-168; and

- A letter from the Human Resources & Recruiting Manager detailing the education held by **15** other employees at that time currrently employed by Wolfram Research, Inc. in the same or similar roles, all of whom hold a minimum of a Bachelor's degree in related quantitative or technical STEM fields, including various Engineering majors, Mathematics, and Physics. Of particular note is that out of the 15 employees in similar roles, five of them hold a Master's degree in a STEM field and one holds a PhD in Physics. *See* Wolfram_H-1B_Record 170-172.

- Job opening postings by Wolfram Research, Inc. in the past for roles similar to the offered position, demonstrating a consistent requirement for a Bachelor's degree in Engineering, Computer Science, Mathematics, Physics or related. *See* Wolfram_H-1B_Record 174-183.

20.    USCIS ultimately denied Plaintiff's petition on January 2, 2020. Focusing firstly on the definition of specialty occupation found at 8 C.F.R. §214.2(h)(4)(ii), the denial determines that the duties as described in the initial petition, and the subsequent employer letter in response to the RFE, "described the duties of the proffered position in relatively generalized and abstract terms that do not relate substantial details about either he position or its constituent duties." And "…did not further elaborate on the specific tasks, methodologies and applications of knowledge that would be required in furtherance of these overarching duties." *See* Wolfram_H-1B_Record 188. The denial concludes, "Without a meaningful job description, the record lacks evidence sufficiently concrete and informative to demonstrate that the proffered position requires a specialty occupation's level of knowledge in a specific specialty. The duties as described do not communicate: (1) the actual work that the beneficiary would perform; (2) the complexity,

uniqueness and/or specialization of the duties; or (3) the correlation between that work and a
need for a particular level of highly specialized knowledge in a specific specialty." The denial
goes on to state, "Thus you have not shown that the proffered position is a specialty occupation
and the petition must be denied on this basis alone." *See* Wolfram_H-1B_Record 188. This is
directly in opposition to the implementing regulations which unequivocally state that a position
will satisfy the statutory definition of specialty occupation if it meets **just one** of criteria found at
8 C.F.R. § 214.2(h)(4)(iii)(A).

21.     After concluding that on the basis of the definition found at 8 C.F.R.
§214.2(h)(4)(ii) the petition must be denied, the denial goes on to state, "However, USCIS will
analyze the duties as described and the evidence of record to determine whether the proffered
position as described would qualify as a specialty occupation," and "When attempting to
establish whether the position is a specialty occupation, you must show that the position meets at
least one of the four criteria at 8 CFR 214.2(h)(4)(iii)(A)." *See* Wolfram_H-1B_Record 188-189.
The denial proceeds to examine each of the four "specialty occupation" factors enumerated by
regulation at 8 C.F.R. § 214.2(h)(4)(iii)(A) and concludes for each criterion that the Plaintiff
failed to meet its burden of proof. *See* Wolfram_H-1B_Record 189-194.

22.     Despite a detailed response from the Plaintiff supported by the credible
documentation outlined above, and sufficient evidence (under the preponderance of the evidence
standard) to meet three of the four criteria enumerated by regulation at 8 C.F.R. §
214.2(h)(4)(iii)(A), the denial proceeds to purportedly thoroughly examine and reject all of the
evidence provided. However, the denial in fact ignores key pieces of evidence, and contrives
incorrect conclusions based on misapplication of the law or application of ultra vires standards.
In one instance, such a conclusion is centered on the Department of Labor's publication, the
Occupational Outlook Handbook (OOH), and its required education for Sales Engineers. In that

"analysis" the USCIS appears to be reinterpreting 8 C.F.R. § 214.2(h)(4)(iii)(A)(1) to state a

bachelor's or higher degree or its equivalent is ***always*** [rather than normally] the minimum

requirement for entry into the particular position, elaborating as follows,

> As stated in the OOH, the occupation allows for a wide range of educational credentials
>
> to qualify. While the OOH indicates that it is common for Sales Engineers to obtain a
>
> degree, the OOH clarifies that a bachelor's degree or its equivalent in a specific specialty
>
> is not normally the minimum required (sic) for entry into the occupation. Further, the
>
> OOH also indicates that Sales engineers have degrees in a wide range of unrelated
>
> degrees including chemistry or business. Accordingly, the position you offered to the
>
> position does not meet this criterion. *See* Wolfram_H-1B_Record 190.

The OOH in fact states,

> Sales engineers ***typically*** need a bachelor's degree in engineering or a related field.
>
> However, a worker without a degree, but with previous sales experience as well as
>
> technical experience or training, ***may*** become a sales engineer. Workers who have a
>
> degree in a science, such as chemistry, or in business with little or no previous sales
>
> experience, ***also may*** become sales engineers. [emphasis added]
>
> University engineering programs generally require 4 years of study. They vary in content,
>
> but all programs include courses in math and the physical sciences. In addition, most
>
> programs require developing strong computer skills. *See* Wolfram_H-1B_Record 189-
>
> 190.

The USCIS made the same argument in the RFE. *See* Wolfram_H-1B_Record 066. Petitioner

provided a valid rebuttal to the argument in its response, explaining that the word used in the

OOH, "typically," is equivalent to the language of the regulation, "normally" and therefore the

OOH actually supports a finding that the role qualifies under 8 C.F.R. § 214.2(h)(4)(iii)(A)(1).

*See* Wolfram_H-1B_Record 054-055. The denial simply restates its argument that the OOH

supports its decision that the offered role does not meet the criterion at 8 C.F.R. §

214.2(h)(4)(iii)(A)(1) by regurgitating additional verbiage from the OOH. *See* Wolfram_H-

1B_Record 189-190. The denial further misinterprets and ignores the relevant portion of

additional evidence provided by the Petitioner regarding the requirements stated by the

Department of Labor's O*NET for Sales Engineers. *See* Wolfram_H-1B_Record 055-056 and

128-136. The Denial claims the Petitioner's additional evidence and argument focused on the

Sales Engineer role being designated by the Department of Labor as a Job Zone Four, *See*

Wolfram_H-1B_Record 190. The Job Zone was not at all a part of the Petitioner's argument. *See*

Wolfram_H-1B_Record 055-056. Rather, the Petitioner pointed out that the Department of

Labor's O*NET website clearly states in its Summary Report, at the very top of the page, that

Sales Engineers, "Sell business goods or services, the selling of which requires a technical

background equivalent to a baccalaureate degree in engineering." *See* Wolfram_H-1B_Record

055-056 and 128.

     23.     Similarly, the denial addresses and disregards evidence submitted to establish that

the degree requirement is common to the industry in parallel positions among similar

organizations. *See* Wolfram_H-1B_Record 190-192. Wolfram Research, Inc provided six job

postings for similar organizations, its "competitors." As described above, credible, objective

documentation of Dun & Bradstreet's listing of competitors was submitted in response to the

RFE, as was documentation showing USCIS's VIBE program relies on Dun & Bradstreet. *See*

Wolfram_H-1B_Record 158-168. Not only does the denial fail to acknowledge the evidence, it

actually states "Cannot determine whether this entity is similar to the petitioning entity" for

MathWorks, PTC and National Instruments, all of which are listed by Dun & Bradstreet as

Wolfram Research, Inc.'s competitors. The denial goes on to state,

> Although you submitted 06 job postings…Three Job postings you provided indicate that
>
> the employers would accept applicants with any engineering degree. A position that
>
> allows any "engineering" degree or a bachelor's degree in any field to qualify is not a
>
> specialty occupation because engineering encompasses numerous fields, many of which
>
> are not directly related to each other and to the proffered position. *See* Wolfram_H-
>
> 1B_Record 192.

Wolfram Research, Inc. met its burden of proof for this criterion, and yet the denial introduces an

additional, ultra vires interpretation that "engineering encompasses numerous fields, many of

which are not directly related to each other and to the proffered position." This statement is

entirely subjective, conclusive and not supported by citation to the law. Absolutely no evidence

nor support for this conclusion is provided in the denial. Nor was this raised by the USCIS in the

RFE issued on October 9, 2019 and therefore, Wolfram Research, Inc. was not afforded an

opportunity to refute this particular reason for denial in its response to the RFE. At least one

other court has rejected this specific and specious interpretation – rejecting an engineering

degree requirement on the ground that a general degree in engineering or one of its other

subspecialties conflicts with the longstanding constructions that recognizes that a position can

qualify as a specialty occupation even if it permits a degree in more than one academic

discipline. *See* Inspectionxpert Corporation v. Cuccinelli, 1:19cv65 (M.D.N.C. Mar. 5, 2020).

24.      Apart from Defendants' failure to either acknowledge or accurately address the evidence

provided by the Plaintiff to demonstrate that the position is a "specialty occupation," there is no

basis in law or regulation for Defendants' conclusion that Wolfram Research, Inc. has not

demonstrated it normally requires a degree or its equivalent for the position. Specifically, with

respect to the probative evidence of Wolfram Research, Inc.'s past hiring practices provided by

the Human Resources & Recruiting Manager, the denial ignores the evidence altogether.

Evidence that demonstrates that Wolfram Research, Inc. "normally" hires individuals with a

minimum of a bachelor's in the degree fields Computer Science, Engineering, Mathematics,

Physics or a related technical or quantitative field, by listing out 15 current employees in same or

similar roles with at least a Bachelor's degree in a related field. *See* Wolfram_H-1B_Record 170-

172. The denial simply fails to address the letter at all. *See* Wolfram_H-1B_Record 193-194.

25.      Instead, it does address the Petitioner's submission of evidence of job opening postings

that Petitioner has made over the years, recruiting for similar positions. *See* Wolfram_H-

1B_Record 174-183. And the denial then returns to focus on the same incorrect argument

outlined above, that by accepting applicants or employees with any "engineering" degree, this

somehow transforms the proffered role into one that is no longer a specialty occupation. *See*

Wolfram_H-1B_Record 193.

> You submitted a list of your job postings for similar positions. However, the job postings
>
> you provided indicate that you would accept applicants with any "engineering" degree.
>
> You also indicate that the duties of the proffered position can be performed by an
>
> individual with a bachelor's degree or higher in engineering. The issue here is that the
>
> field of engineering is a broad category that covers numerous and various specialties,
>
> some of which are only related through the basic principles of science and mathematics,
>
> e.g., nuclear engineering and aerospace engineering. Therefore, a general degree in
>
> engineering or one of its other subspecialties, such as chemical engineering or
>
> mechanical engineering, is not closely related to computer science. Also, any and all
>
> engineering specialties are not directly related to the duties and responsibilities of the
>
> particular position proffered in this Fom1 I-129. Therefore, the proffered position does

not have a bachelor's or higher degree in a specific specialty as the normal minimum

requirement for entry into the position based on your own standards. Hence, the position

is not a specialty occupation. *See* Wolfram_H-1B_Record 193.

Again, as addressed *infra*, the reasoning used for denial based on this specific and specious

interpretation – rejecting an engineering degree requirement on the ground that a general degree

in engineering or one of its other subspecialties, conflicts with the longstanding constructions

that recognizes that a position can qualify as a specialty occupation even if it permits a degree in

more than one academic discipline. *See* Inspectionxpert Corporation v. Cuccinelli, 1:19cv65

(M.D.N.C. Mar. 5, 2020). This was introduced in the denial and not raised in the RFE, thus

Petitioner was not afforded a chance to rebut in its response to the RFE.

26.     The denial contains additional statements that indicate a perception that the Plaintiff may

be fabricating the requirements of the offered role, such as, "Your creation of a position with an

obligatory bachelor's degree requirement will not conceal the fact that the position is not a

specialty occupation," and

> If USCIS was limited to reviewing a petitioner's self-imposed employment requirements,
> then any alien with a bachelor's degree could be brought into the United States to
> perform a menial, non-professional or an otherwise non-specialty occupation, so long as
> the employer required all such employees to have bachelor's degrees. (citing Matter of
> Michael Hertz Associates 19 I&N Dec. 558 (Comm. 1988)). *See* Wolfram_H-1B_Record
> 193.

27.     Despite its voluminous 10-page length, the denial constitutes mostly boilerplate language

with only a cursory examination (and unsupported dismissal) of the credible and probative

documentation provided by the Plaintiff in the both the initial submission and the response to the

RFE. The denial fails to provide actual substantive review and analysis, contradicting the

denial's assertion that USCIS carefully reviewed and considered the entire record based on a "preponderance of the evidence" standard. The denial patently ignores some of the evidence entirely.

28.     This denial leaves Ms. Vardhani at risk of losing her work authorization upon the expiration of her current Employment Authorization Card.

29.     Unless the Court vacates the denial of Wolfram Research, Inc.'s petition, the company will likely lose the services of a valuable employee in the United States.

### Exhaustion

35.     The January 2, 2020, denial by USCIS of Wolfram Research, Inc.'s petition constitutes a final agency action under the APA, 5 U.S.C. § 704. Neither the INA nor DHS regulations at 8 C.F.R. § 103.3(a) require administrative appeal of the denial.

36. Under 5 U.S.C. §§ 702 and 704, Wolfram Research, Inc. has suffered a "legal wrong" and has been "adversely affected or aggrieved" by agency action for which there is no adequate remedy at law.

### CAUSE OF ACTION

### COUNT I

### Administrative Procedure Act Violation (5 U.S.C. § 706)

37.     Plaintiff incorporates the allegations set forth in the preceding paragraphs.

38.     Defendants' denial of the Plaintiff's nonimmigrant petition constitutes final agency action that is arbitrary, capricious, an abuse of discretion, and not in accordance with the law.

39.     No rational connection exists between the conclusions asserted by USCIS in its denial and the facts in the record.

**REQUEST FOR RELIEF**

The Plaintiff requests that this Court grant the following relief:

1.    Declare the Defendants' denial of Wolfram Research Inc.'s H-1B petition is
unlawful.

2.    Vacate the denial and order Defendants to promptly approve the nonimmigrant
petition.

3.    Award Plaintiff its costs in this action; and

4.    Grant any other relief that this Court may deem proper.


Dated: September 18, 2020                                        Wolfram Research, Inc.



                                                        By:/s/ Diana C. Bauerle

                                        _____

                                        Diana C. Bauerle (IL Bar No. 6271926)
                                                        diana@wolfram.com
                                                        Wolfram Research, Inc.
                                                        Company Address:
                        100 Trade Center Drive Champaign, IL 61820
                                        Telephone: (217) 398-0700 ext. 5433
                                                        Mobile: (703) 517-2231
                                                        Facsimile: (217) 398-0747

                                                        Attorney for Plaintiff